IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAPHAEL BOUSQUET**<br>**MEGAN E. KELLEY**<br>1130 5th St., N.W. Unit #5<br>Washington, D.C., 20001-3651 | : <br> : <br> :   **CIVIL ACTION NO.**<br> : <br> : <br> : |
| **PLAINTIFFS,** | : <br> : |
| **VS.** | : <br> : |
| **PREFERRED SERVICE MORTGAGE, LLC**<br>c/o Resident Agent<br>**CORPORATION SERVICE COMPANY**<br>1090 VERMONT AVE., N.W.<br>Washington, DC 20005 | : |

Case: 1:09-cv-02242
Assigned To : Sullivan, Emmet G.
Assign. Date : 11/25/2009
Description: General Civil

**SUNTRUST MORTGAGE, INC.**
c/o Resident Agent
**CORPORATION SERVICE COMPANY**
1090 VERMONT AVE. N.W.
Washington, DC 20005

**BRENNAN TITLE CO.**
5100 Wisconsin Ave., N.W., Suite 514,
Washington, D.C. 20016

**DEFENDANTS.**

## COMPLAINT

### THE PARTIES

1.     Plaintiffs Raphael Bousquet and Megan E. Kelley are adult natural persons who purchased a condominium at 1130 5th St., N.W. Unit #5, Washington, D.C., 20001-3651 on November 25, 2008, where they reside.  Events in connection with that purchase are at issue in this lawsuit.

2.     Defendant Preferred Service Mortgage, LLC ("Preferred Mortgage") is located at 8391 Old Courthouse Road, Suite 205, Vienna, VA 22182-3819. Preferred Mortgage acted as the mortgage broker on behalf of plaintiffs in the condominium purchase referenced above.

3.     Defendant Suntrust Mortgage, Inc. ("Suntrust") has its headquarters at 901 Semmes Ave., Richmond, VA 23224. Plaintiffs borrowed money, in the principal amount of $417,000, to purchase the condominium, and Suntrust was the mortgage lender.

4.     Defendant Brennan Title Co. ("Brennan Title") is located at 5100 Wisconsin Ave., N.W., Suite 514, Washington, D.C. 20016. Brennan Title was the closing agent, providing settlement services, in connection with the condominium purchase referenced above.

**JURISDICTION AND VENUE**

5.     This case arises under the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, et seq.. This Court has jurisdiction over this action pursuant to 12 U.S.C. §2614, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

6.     Venue is proper in this judicial district pursuant to 12 U.S.C. §2614 because the property is located in this district, and pursuant to 28 U.S.C. § 1391because a substantial part of the acts complained of herein occurred in this district and defendants do business and can be found in this district.

**STATEMENT OF FACTS**

7.     This case concerns plaintiffs' purchase of a condominium in Washington, D.C., in which transaction defendants charged plaintiffs improper fees, failed to disclose, concealed, and/or misrepresented material information, and breached duties owed to plaintiffs.

**A.     Non Disclosure of the Yield Spread Premium**

2

8.     Plaintiffs decided to purchase for their residence a condominium located at 1130 5th St., N.W. Unit #5, Washington, D.C., 20001-3651.  Closing occurred on November 25, 2008 at approximately 6 p.m. at the offices of Brennan Title.  As first-time home buyers, this was the first closing in which plaintiffs had participated.

9.     Plaintiffs retained Preferred Mortgage to act as their mortgage broker in connection with this purchase.

10.    Preferred Mortgage owed a duty of undivided loyalty to plaintiffs in connection with this purchase.

11.    At the closing, Preferred Mortgage provided to plaintiffs a document stating that Preferred Mortgage's fee was $6,129.  Exhibit A hereto.  Although the document states that "I [plaintiffs] will pay you $6,129.90", that sentence has an asterisk.  At the bottom of the document it states:  "Lender to pay: 6,129.90."

12.    This document affirmatively represents that plaintiffs are paying nothing to Preferred Mortgage, because the lender, Suntrust, is taking care of Preferred Mortgage's fee.

13.    When plaintiffs asked Preferred Mortgage's representatives, they confirmed that plaintiffs would not have to pay any fees, because the lender was paying them.

14.    In reality, defendants hid and disguised the fact that plaintiffs were paying this fee through what is called a "yield spread premium."

15.    A yield spread premium is an arrangement where the borrower (here plaintiffs) pay certain closing costs---such as mortgage brokerage fees---not through cash up-front at closing, but rather through a higher- than- market mortgage interest rate over the life of the mortgage.

3

16.     In a yield spread premium, the lender (here Suntrust), receives the benefit of the higher than market mortgage interest rate over the life of the mortgage, and then compensates the mortgage broker with cash shortly after the closing.  In effect, both Suntrust and Preferred Mortgage benefit by charging plaintiffs above-market interest rates.

17.     In this case, the interest rate to which plaintiffs agreed, without knowing of the yield spread premium, was 6.125%.  See Exhibit A.  If plaintiffs had paid the $6,129 in cash, this would have represented approximately 1.5 points, or a .5% decrease in interest rate.  Without the yield spread premium, plaintiffs' mortgage interest rate would have been 5.625%.

18.     For plaintiffs' $417,000 mortgage, the difference between these two interest rates amounts to approximately $31,275 that Suntrust has earned and will earn over the life of the mortgage.

19.     Suntrust agreed to pay Preferred Mortgage $6,129 (and, upon information and belief, paid such amount in cash shortly after closing) for achieving this result.

20.     A yield spread premium can be beneficial in a situation where the borrower cannot afford to pay closing costs with cash, and would rather pay them over time through a higher than market mortgage interest rate.

21.     Plaintiffs, however, had ample cash to pay the mortgage broker fees (they left the settlement with a reserve of $30,000), and would have chosen to pay the fees in cash at closing, instead of paying a higher than market interest rate, if this matter had been disclosed to them, as was required.

22.     The Department of Housing and Urban Development (HUD), which administers RESPA, takes the position that yield spread premiums are not illegal, provided they are **fully**

4

**disclosed** to the borrower, so that the borrower can make an intelligent election as to whether to pay fees with cash at closing, or over time through a higher than market mortgage interest rate.

23.     As HUD's 2001 Policy Statement confirms: "HUD currently **requires** the disclosure of yield spread premiums on the Good Faith Estimate and the HUD-1." 66 *Federal Register* 53056 (2001) (emphasis supplied).

24.     Defendants did not disclose the yield spread premium as required, either in the Good Faith Estimates, or the HUD-1, or any other document.

25.     Preferred Mortgage did not disclose its existence on Exhibit A, the document they tendered at closing.

26.     Preferred Mortgage prepared and furnished to plaintiffs a "Good Faith Estimate," dated November 7, 2008.  Exhibit B hereto.  The heading that follows Line 811 reads: "Compensation to Broker From Lender (Not Paid out of Applicant's Loan Proceeds)."  That is where the yield spread premium should be disclosed.  This section was left blank.  It is not disclosed in Exhibit B.

27.     Preferred Mortgage prepared and furnished to plaintiffs a second "Good Faith Estimate" on November 11, 2008.  Exhibit C.  Again, there was no disclosure of the yield spread premium on this document.

28.     Preferred Mortgage was required, 72 hours before closing, to provide an updated and complete Good Faith Estimate.  No such Estimate was provided, and there was no disclosure of the yield spread premium.

29.     The HUD-1 form prepared by Brennan Title, and furnished to plaintiffs at closing, is Exhibit D hereto.  Brennan Title, Preferred Mortgage, and Suntrust are responsible for the content of this document.  It does not disclose the existence of the yield spread premium.

30.     Rather, it states that "Broker Compensation to Preferred" is "$6,129  POC by lender." Exhibit D, line 807. "POC" stands for "Paid Outside Closing". The HUD-1, by omitting the yield spread premium, affirmately misrepresents that Suntrust alone is paying the broker's fee. The HUD-1 fails to disclose that plaintiffs are actually paying this amount through an above-market mortgage rate for 30 years, paying about $25,146 more than they would otherwise have paid ($31,275 versus $6,129).

31.     Brennan Title also furnished to plaintiffs a draft HUD 1 prior to closing. Exhibit E. On that document, at line 807, Brennan Title typed the $6,129 so that it is partially illegible.

32.     When plaintiffs asked Brennan Title what the obscured numbers meant on line 807, its representative said words to the effect: "Don't worry about that, you're not paying it anyway."

33.     Brennan Title, as an experienced closing agent, knew from its entry on Line 807 that a yield spread premium was being charged to plaintiffs, but the conversation alleged in ¶34 misrepresented this to plaintiffs.

34.     During the closing itself, defendants Preferred Mortgage and Brennan Title again confirmed to plaintiffs that the $6,129 fee was being paid entirely by Suntrust.

35.     There was no disclosure of the yield spread premium at any time to plaintiffs.

## B.     Failure to Secure Lowest Market Rates

36.     Beginning at least November 20, 2008, mortgage interest rates for 30 year fixed mortgages (plaintiffs' type) began a very steep decline.

37.     This steep decline included a sharp decline on November 25th itself. During that day, interest rates dropped to 4.75%. The settlement on plaintiffs' condominium occurred at 6

6

p.m., and Preferred Mortgage was well aware that interest rates had declined precipitously by the time of plaintiffs' closing.

38.     Preferred Mortgage, as plaintiffs' broker, owed a duty to plaintiffs to obtain for them the lowest rate possible.

39.     Preferred Mortgage had a duty to disclose to plaintiffs the prevailing market rate at the time of the closing.

40.     However, Preferred Mortgage had conflicted loyalties because of its deal with Suntrust, whereby it was in Suntrust's interest to lock plaintiffs into a higher than market interest rate to pay the yield spread premium, see above.

41.     Preferred Mortgage locked plaintiffs into a rate of 6.125%, which was far above the prevailing market rate of $4.75% on November 25, 2008.

42.     If, instead, plaintiffs had been provided a 30 year fixed mortgage at 4.75% on the same principal amount of $417,000, plaintiffs would have saved approximately $86,000.

### COUNT I – FAILURE TO DISCLOSE YIELD SPREAD PREMIUM IN VIOLATION OF RESPA STATUTE (AGAINST ALL DEFENDANTS)

43.     The foregoing allegations are incorporated by reference.

44.     The RESPA statute, 12 U.S.C. §2603 requires that defendants provide to plaintiffs a settlement statement that "shall conspicuously  and clearly itemize **all** charges imposed upon the borrower...in connection with the settlement..."

45.     The existence and nature of the yield spread premium was not disclosed, in violation of this statutory mandate.

46.     The RESPA statute, 12 U.S.C. §2604 (c) requires that "each lender shall include with the booklet a good faith estimate or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement as prescribed by the Secretary."

47.     Here, the Good Faith Estimates prepared by Preferred Mortgage, and which are legally also the statutory responsibility of Suntrust (Exhibits B and C hereto) failed to disclose the yield spread premium.

48.     HUD's regulations and policy statements require the disclosure of yield spread premiums in Good Faith Estimates provided prior to closing.  Defendants did not do so.

49.     HUD's regulations and policy statements require the disclosure of yield spread premiums on the HUD-1 settlement statement used at closing. (Exhibit D). Defendants did not do so.

50.     HUD's regulations and policy statements further required Preferred Mortgage and Suntrust to provide an updated, accurate Good Faith Estimate within 72 hours of closing.  This was not done.

51.     Preferred Mortgage's document tendered at closing (Exhibit A) affirmatively misrepresented the charges, by failing to disclose the yield spread premium.

52.     Brennan Title prepared and furnished to plaintiffs an illegible and misleading form before closing (Exhibit E, Line 807), and then affirmatively misrepresented that plaintiffs were not responsible for paying broker's fees.

53.     Plaintiffs would have elected to pay the mortgage broker fees up front at closing, if they had been truthfully told that they were instead being charged for these through a yield spread premium.

54.     Plaintiffs have been damaged by defendants' violations of RESPA by the difference they would have paid ($6,129) versus the amount they are now obligated to pay ($31,275).

## COUNT II – FAILURE TO SECURE LOWEST MARKET RATES
## (AGAINST PREFERRED MORTGAGE AND SUNTRUST)

55.     The foregoing allegations are incorporated by reference.

56.     Preferred Mortgage failed in its duty of undivided loyalty to obtain the lowest applicable market rate for plaintiffs when interest rates declined during the week of, and during the day of, plaintiff's closing.

57.     Preferred Mortgage was obligated to obtain for plaintiffs as close to the prevailing rate of 4.75% as possible.

58.     Preferred Mortgage did not do so because of its agreement or understanding with Suntrust that, instead, a higher than market rate would be charged to plaintiffs that contained the undisclosed yield spread premium.

59.     Suntrust and Preferred Mortgage, upon information and belief, have a pattern of ongoing arrangements for yield spread premiums which result in Preferred Mortgage's interests favoring Suntrust, not the buyers who retain them.

60.     Suntrust is complicit in, and benefits from, this arrangement.

61.     Plaintiffs were harmed and damaged by this breach of duty, in an amount of approximately $86,000, the value of the difference between the higher than market rate interest rates to which they were locked in, compared with the market rates which they should have been provided.

9

## COUNT III – FAILURE TO DISCLOSE MATERIAL FACTS
## IN VIOLATION OF D.C. CODE 28-3904
## (AGAINST ALL DEFENDANTS)

62.     The foregoing allegations are incorporated by reference.

63.     The District of Columbia Code, DC ST § 28-3904, "Unlawful Trade Practices", is

violated, *inter alia,* by:

- "misrepresent[ing] as to a material fact which has a tendency to mislead;

  or

- "fail[ing] to state a material fact if such failure tends to mislead";.

64.     Defendants have violated one or both of these provisions.

65.     Plaintiffs have been damaged by defendants' violations.

## COUNT IV – NEGLIGENT MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

66.     The foregoing averments are incorporated by reference.

67.     The defendants made one or more false statements or omissions of fact.  These

statements or omissions were in violation of a duty to exercise reasonable care.  The false

statements or omissions involved a material issue.  The plaintiffs reasonably relied upon the false

statements or omissions to their detriment.  Defendants' false statements or omission of a fact

caused injury to plaintiffs.

## COUNT V – INTENTIONAL MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

68.     Plaintiffs incorporate the foregoing allegations by reference.

69.     Defendants made one or more false representations of material fact with

knowledge of the falsity and intent to deceive, and plaintiffs relied thereon to their detriment.

10

57319_2

## COUNT VI – UNJUST ENRICHMENT
### (AGAINT ALL DEFENDANTS)

70.     The foregoing averments are incorporated by reference.

71.     The plaintiffs conferred benefits upon each of the defendants, the defendants accepted and retained those benefits, and it would be unjust for defendants not to compensate plaintiffs for the value of those benefits.  Defendants have retained the benefits of their wrongful conduct, and have been unjustly enriched thereby.

WHEREFORE, plaintiffs pray for the following relief:

    1)      Compensatory damages;

    2)      Statutory damages;

    3)      Enhanced damages, including punitive damages, as applicable;

    4)      Attorneys Fees and Costs;

    5)      Such Other and Further Relief and the Court deems just

### JURY TRIAL DEMANDED

Plaintiffs demand trial by trial as to all claims so triable


Respectfully submitted,


Scott C. Borison
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016

Of counsel:

Robert J. LaRocca
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100

11

57319_2

Philadelphia, PA  19107
(215) 238-1700

Counsel for Plaintiffs

57319_2