### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RAPHAEL BOUSQUET** | : | |
| **MEGAN E. KELLEY** | : | **CIVIL ACTION NO.** |
| | : | |
| **PLAINTIFFS,** | : | **1:09-CV-02242-EGS** |
| | : | |
| **VS.** | : | |
| | : | |
| **PHH HOME LOANS, LLC** | : | |
| | : | |
| **SUNTRUST MORTGAGE, INC.** | : | |
| | : | |
| **DEFENDANTS.** | : | |

### AMENDED COMPLAINT

### THE PARTIES

1.      Plaintiffs Raphael Bousquet and Megan E. Kelley, husband and wife, are adult natural persons who reside at 1130 5th St., N.W. Unit #5, Washington, D.C., 20001-3651.  Their purchase of this condominium is at issue in this lawsuit.

2.      Defendant PHH Home Loans, LLC, d/b/a Preferred Mortgage Group f/k/a Preferred Service Mortgage, LLC f/k/a Preferred Mortgage Group, Inc. ("Preferred Mortgage")  is located at 8391 Old Courthouse Road, Suite 205, Vienna, VA 22182-3819.   Preferred Mortgage acted as the mortgage broker on behalf of plaintiffs in the condominium purchase referenced above.

3.      Defendant  Suntrust Mortgage, Inc. ("Suntrust") has its headquarters at 901 Semmes Ave., Richmond, VA 23224.  Plaintiffs borrowed money, in the

65453

principal amount of $417,000, to purchase the condominium, and Suntrust was the mortgage lender.

## JURISDICTION AND VENUE

4.      This case arises under the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, et seq.  This Court has jurisdiction over this action pursuant to 12 U.S.C. §2614, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

5.      Venue is proper in this judicial district pursuant to 12 U.S.C. §2614 because the property is located in this district, and pursuant to 28 U.S.C. §1391 because a substantial part of the acts complained of herein occurred in this district and defendants do business and can be found in this district.

## STATEMENT OF FACTS

6.      Plaintiffs purchased the condominium where they reside on November 25, 2008.  Defendant Suntrust was the mortgage lender, and Preferred Mortgage the mortgage broker.  Plaintiffs were first-time home buyers.

### A.      Non Disclosure of the Yield Spread Premium

7.      Preferred Mortgage prepared a document which plaintiffs signed at the closing on November 25, 2008.  Ex. A hereto.  It stated that Preferred Mortgage's fee was $6,129.  Although the document states that "I [plaintiffs] will pay you $6,129.90", that sentence has an asterisk.  At the bottom of the document it states: "Lender to pay: 6,129.90.  Borrower to pay: [zero]."

8.      This document affirmatively represents that Preferred Mortgage's fees are being paid by Suntrust, and that plaintiffs are not paying those fees.

9.     Ex. A did not disclose the fact that plaintiffs were paying this fee through what is called a "yield spread premium," which cost plaintiffs far more money than if plaintiffs had paid the fees outright at the closing.

10.    A yield spread premium is an arrangement where the borrower (here plaintiffs) pays certain closing costs---such as mortgage brokerage fees---not through cash up-front at closing, but rather through a higher- than- market mortgage interest rate over the life of the mortgage.

11.    In a yield spread premium, the lender (here Suntrust), receives the benefit of the higher than market mortgage interest rate over the life of the mortgage, and then compensates the mortgage broker with cash shortly after the closing.

12.    In this case, the interest rate to which plaintiffs agreed, without knowing of the yield spread premium, was 6.125%. *See* Exhibit A.  If plaintiffs had paid the $6,129 in cash, this would have represented approximately 1.5 points, or a .5% decrease in interest rate.  Without the yield spread premium, plaintiffs' mortgage interest rate would have been 5.625%.

13.    For plaintiffs' $417,000 mortgage, the difference between these two interest rates amounts to approximately $31,275 that Suntrust has earned and will earn over the life of the mortgage.

14.    Suntrust agreed to pay Preferred Mortgage $6,129 (and, upon information and belief, paid such amount in cash shortly after closing) for achieving

this result.  Plaintiffs are paying $25,146 more than they would otherwise have paid ($31,275 versus $6,129).

15.    A yield spread premium is only beneficial to the consumer in a situation where the borrower cannot afford to pay closing costs with cash, and therefore must pay them over time through a higher than market mortgage interest rates.

16.    Plaintiffs, however, had sufficient cash to pay the mortgage broker fees (they left the settlement with a reserve of $30,000), and would have chosen to pay the fees in cash at closing, instead of paying a higher than market interest rate, if this matter had been disclosed to them.

17.    The Department of Housing and Urban Development (HUD), which administers RESPA, takes the position that yield spread premiums are not illegal *per se*, provided they are fully disclosed to the borrower, so that the borrower can make an intelligent election as to whether to pay fees with cash at closing, or over time through a higher than market mortgage interest rate.

18.    As HUD's 2001 Policy Statement confirms: "HUD currently **requires** the disclosure of yield spread premiums on the Good Faith Estimate and the HUD-1." 66 *Federal Register* 53056 (2001) (emphasis supplied).

19.    Preferred Mortgage did not disclose its existence on Exhibit A, the document it tendered at closing.  Paragraphs 8-9 above.  Suntrust either jointly prepared this document with Preferred Mortgage, or reviewed Exhibit A before closing.

20.     Preferred Mortgage and Suntrust prepared a "Financing Agreement", dated November 25, 2008 (Exhibit B).  This document, at the bottom, itemized the "fees and charges" that plaintiffs were required to pay.  There is no commission payment to Preferred Mortgage Group listed.  This is consistent with Ex. A, stating that the lender was paying this commission.  Suntrust reviewed Exhibit B before closing.

21.     Preferred Mortgage prepared and furnished to plaintiffs a "Good Faith Estimate," dated November 7, 2008.  Exhibit C hereto.  The heading that follows Line 811 reads: "Compensation to Broker From Lender (Not Paid out of Applicant's Loan Proceeds)."  That is where the yield spread premium should be disclosed.  Its existence was not disclosed on Exhibit C.  Suntrust reviewed Ex. C before closing.

22.     Preferred Mortgage prepared and furnished to plaintiffs a second "Good Faith Estimate" on November 11, 2008.  Exhibit D.  Again, there was no disclosure of the yield spread premium on this document at line 811.  Suntrust reviewed Ex. D before closing.

23.     Preferred Mortgage was required, 72 hours before closing, to provide an updated and complete Good Faith Estimate.  No such Estimate was provided, and hence there was no disclosure of the yield spread premium at this time.

24.     Preferred Mortgage and Suntrust provided to the settlement agent Brennan Title information for a draft HUD 1 settlement sheet, which is dated November 21, 2008 (four days prior to the closing).  Exhibit E.  That document, at line 807, stated "POC by Lender."  That means "Paid Outside Closing by Lender."

This is consistent with Ex. A and B.  Both Preferred Mortgage and Suntrust reviewed Ex. E before closing.

25.    At the closing itself, plaintiffs were furnished Exhibit F hereto, the HUD Settlement sheet.  Preferred Mortgage and Suntrust were aware of the contents of this document, and supplied the information to the settlement agent Brennan Title.  It does not disclose the existence of the yield spread premium. Rather, it states that "Broker Compensation to Preferred" is "$6,129  POC by lender."  Exhibit F, line 807.  The HUD-1 affirmatively represents that Suntrust alone is paying the broker's fee, and fails to disclose that plaintiffs are actually paying this amount through an above-market mortgage rate.

26.    There was no disclosure of the yield spread premium at any time to plaintiffs.

## COUNT I – VIOLATION OF RESPA STATUTE
### (AGAINST SUNTRUST and PREFERRED MORTGAGE)

27.    The allegations of 1-28 are incorporated by reference.

28.    Suntrust is a lender, and Preferred Mortgage is its duly appointed agent for purposes of making the loan at issue in this case.  In addition, Suntrust and Preferred Mortgage have affiliated business arrangements with each other for mortgage-related matters.

29.    The RESPA statute, 12 U.S.C. §2607(c) requires Suntrust and Preferred Mortgage to disclose fully the existence of their relationship and to provide a "written estimate of the charge or range of charges…"

30.     Suntrust and Preferred Mortgage violated 12 U.S.C. §2607(c) by concealing the true nature of their relationship from plaintiffs, and did not provide an accurate "written estimate of the charge," by:  (A) concealing that they had agreed that plaintiffs would pay a yield spread premium, resulting in a lucrative interest rate to Suntrust, and by (B) misrepresenting the Suntrust was paying Preferred Mortgage's brokerage commission, in Exs. A-F hereto.

31.     Suntrust and Preferred Mortgage are liable for this violation of 12 U.S.C. §2607(c) pursuant to 12 U.S.C. §2607(d).

32.     These defendants have also violated HUD's regulations and policy statements which have the force of law and require the disclosure of yield spread premiums.

33.     Plaintiffs have been harmed and injured by these violations, by paying $25,146 more than they would have paid if full and truthful disclosure had been made.  Plaintiffs would have elected to pay the mortgage broker fees up front at closing, if they had been truthfully told that they were instead being charged for these fees through a yield spread premium.

### COUNT II – FAILURE TO DISCLOSE MATERIAL FACTS IN VIOLATION OF D.C. CODE 28-3904 (AGAINST PREFERRED MORTGAGE and SUNTRUST)

34.     The foregoing allegations of ¶¶1-33 are incorporated by reference.

35.     The District of Columbia Code, DC ST § 28-3904, "Unlawful Trade Practices", is violated, *inter alia,* by:

- "misrepresent[ing] as to a material fact which has a tendency to mislead; or
- "fail[ing] to state a material fact if such failure tends to mislead".

36.    Suntrust and Preferred Mortgage have violated these provisions by furnishing to plaintiffs the following documents which Preferred Mortgage and Suntrust jointly prepared, or which Preferred Mortgage prepared and Suntrust reviewed:

    A.    Exhibit A hereto, signed by plaintiffs on November 25, 2008, which does not disclose the existence of a yield spread premium, and which misstates that Suntrust is paying Preferred Mortgage's brokerage commission;

    B.    Exhibit B hereto, which plaintiffs signed on November 25, 2008, which does not disclose the existence of the yield spread premium, and which affirmatively states that plaintiffs do not owe any brokerage commission payments to Preferred Mortgage;

    C.    Exhibit C hereto, which was furnished to plaintiffs on or about November 7, 2008, which fails to disclose the existence of the yield spread premium at Line 811;

    D.    Exhibit D hereto, which was furnished to plaintiffs on or about November 11, 2008, which fails to disclose the existence of the yield spread premium at Line 811.

37.    Further, Suntrust and Preferred Mortgage furnished information to the settlement agent Brennan Title for it to prepare and provide to Plaintiffs:

E.    Ex. E hereto, the draft HUD settlement sheet dated November 21, 2008, which at Line 807 represents that the lender, Suntrust, is paying Preferred Mortgage's brokerage commission, and which does not disclose the existence of the yield spread premium;

F.    Ex. F hereto, the final HUD settlement sheet dated November 25, 2008, which at Line 807 represents that the lender, Suntrust, is paying Preferred Mortgage's brokerage commission, and which does not disclose the existence of the yield spread premium.

38.    Preferred Mortgage and Suntrust were aware of Ex. E and F hereto, at closing or prior to closing, and were aware that these documents did not disclose the existence of the yield spread premium and that they misstated that Suntrust was paying Preferred Mortgage's brokerage commission.

39.    The matters recited in Paragraphs 36-37 misrepresent material facts which have a tendency to mislead, and fail to state material facts that tend to mislead, because they fail to disclose that plaintiffs are paying a yield spread premium, resulting in a higher interest rate to plaintiffs than plaintiffs needed to pay or would have paid if they had been given accurate information.

40.    Plaintiffs have been harmed and damaged by defendants' violations, by paying an undisclosed yield spread premium.

## COUNT III – NEGLIGENT MISREPRESENTATION
### (AGAINST PREFERRED MORTGAGE and SUNTRUST)

41.    Plaintiffs incorporate Paragraphs 1-40 as though fully set forth herein.

42.    The defendants had a duty to plaintiffs to exercise reasonable care in making statements about, and disclosing information about, the payment arrangements relating to plaintiffs' purchase of their condominium.

43.    Suntrust and Preferred Mortgage  violated that duty in the following documents they jointly prepared (or which Preferred Mortgage prepared and Suntrust reviewed) and furnished to plaintiffs prior to or at the closing:

> A.    Exhibit A hereto, signed by plaintiffs on November 25, 2008, which does not disclose the existence of a yield spread premium, and which misstates that Suntrust is paying Preferred Mortgage's brokerage commission;

> B.    Exhibit B hereto, which plaintiffs signed on November 25, 2008, which does not disclose the existence of the yield spread premium, and which affirmatively states that plaintiffs do not owe any brokerage commission payments to Preferred Mortgage;

> C.    Exhibit C hereto, which was furnished to plaintiffs on or about November 7, 2008, which fails to disclose the existence of the yield spread premium at Line 811;

       D.      Exhibit D hereto, which was furnished to plaintiffs on or about November 11, 2008, which fails to disclose the existence of the yield spread premium at Line 811.

44.     They also violated this duty by furnishing information to the settlement agent Brennan Title so that it prepared:

       E.      Ex. E hereto, the draft HUD settlement sheet dated November 21, 2008, which at Line 807 represents that the lender, Suntrust, is paying Preferred Mortgage's brokerage commission, and which does not disclose the existence of the yield spread premium;

       F.      Ex. F hereto, the final HUD settlement sheet dated November 25, 2008, which at Line 807 represents that the lender, Suntrust, is paying Preferred Mortgage's brokerage commission, and which does not disclose the existence of the yield spread premium.

45.     Preferred Mortgage and Suntrust were aware of Ex. E and F hereto, at closing or prior to closing, and were aware that these documents did not disclose the existence of the yield spread premium and that they misstated that Suntrust was paying Preferred Mortgage's brokerage commission.

46.     These statements or omissions recited in Paragraphs 43-44 above were in violation of a duty to exercise reasonable care, and involved material issues of

fact.  The plaintiffs reasonably relied upon the misstatements and omissions to their detriment, and were harmed and injured thereby.

**COUNT IV –**
**INTENTIONAL MISREPRESENTATION**
**(AGAINST SUNTRUST and PREFERRED MORTGAGE)**

47.   The averments of Paragraphs 1-46 are incorporated by reference.

48.    Suntrust and Preferred Mortgage intentionally misrepresented to plaintiffs:  that Suntrust was paying Preferred Mortgage's commission; and that plaintiffs were not paying such commission.  Suntrust and Preferred Mortgage intentionally concealed from plaintiffs the existence of the yield spread premium. Defendants made false representations of material fact with knowledge of the falsity and intent to deceive, and plaintiffs relied thereon to their detriment.

49.   Suntrust and Preferred Mortgage did so in the following documents they jointly prepared, or which Preferred Mortgage prepared and Suntrust reviewed:

> A.   Exhibit A hereto, signed by plaintiffs on November 25, 2008, which does not disclose the existence of a yield spread premium, and which misstates that Suntrust is paying Preferred Mortgage's brokerage commission;

> B.   Exhibit B hereto, which plaintiffs signed on November 25, 2008, which does not disclose the existence of the yield spread premium, and which affirmatively states that plaintiffs do not owe any brokerage commission payments to Preferred Mortgage;

      C.     Exhibit C hereto, which was furnished to plaintiffs on or about November 7, 2008, which fails to disclose the existence of the yield spread premium at Line 811;

      D.     Exhibit D hereto, which was furnished to plaintiffs on or about November 11, 2008, which fails to disclose the existence of the yield spread premium at Line 811.

50.     Further, Suntrust and Preferred Mortgage were aware, at or prior to closing, of the documents that the settlement agent Brennan Title prepared based upon information that Preferred Mortgage and Suntrust provided to Brennan Title. Preferred Mortgage and Suntrust permitted plaintiffs to rely upon the following documents, knowing they were misleading in context to Plaintiffs:

      E.     Ex. E hereto, the draft HUD settlement sheet dated November 21, 2008, which at Line 807 represents that the lender, Suntrust, is paying Preferred Mortgage's brokerage commission, and which does not disclose the existence of the yield spread premium;

      F.     Ex. F hereto, the final HUD settlement sheet dated November 25, 2008, which at Line 807 represents that the lender, Suntrust, is paying Preferred Mortgage's brokerage commission, and which does not disclose the existence of the yield spread premium.

51.     Plaintiffs relied to their detriment upon defendants' intentional misstatements and non-disclosures, and have been harmed and injured thereby.

## COUNT V – FAILURE TO SECURE LOWEST MARKET RATES
### (AGAINST PREFERRED MORTGAGE and SUNTRUST)

52.     Plaintiffs relied to their detriment upon defendants' intentional misstatements and non-disclosures, and have been harmed and injured thereby.

53.     Beginning at least November 20, 2008, mortgage interest rates for 30 year fixed mortgages (plaintiffs' type) began a very steep decline.

54.     This steep decline included a sharp decline on November 25th itself, the day of the closing.  During that day, interest rates dropped to 4.75%.  The settlement on plaintiffs' condominium occurred at 6 p.m., and Preferred Mortgage was well aware that interest rates had declined precipitously by the time of plaintiffs' closing.

55.     Preferred Mortgage, as plaintiffs' broker, owed an undivided duty of loyalty to plaintiffs to obtain for them the lowest rate possible, *i.e.*, as close to 4.75% as possible.

56.     Preferred Mortgage had a duty to disclose to plaintiffs the prevailing market rate at the time of the closing.

57.     However, Preferred Mortgage had conflicted loyalties because of its agreement with Suntrust, whereby it was in Suntrust's interest to lock plaintiffs into a higher than market interest rate to pay the yield spread premium, *see* ¶¶ 8-15 above.

**65453**                                        14

58.     In breach of its duty, Preferred Mortgage did not disclose the prevailing market rate and locked plaintiffs into a rate of 6.125%, which was far above the prevailing market rate of $4.75% on November 25, 2008.

59.     If, instead, plaintiffs had been provided a 30 year fixed mortgage at 4.75% on the same principal amount of $417,000, plaintiffs would have saved approximately $86,000.

60.     Suntrust is complicit in, and benefits from, this arrangement.

61.     Plaintiffs were harmed and damaged by this breach of duty, in an amount of approximately $86,000, the value of the difference between the higher than market rate interest rates to which they were locked in, compared with the market rates which they should have been provided.

## COUNT VI – UNJUST ENRICHMENT
### (AGAINT DEFENDANTS SUNTRUST and PREFERRED MORTGAGE)

62.     The foregoing averments 1-61 are incorporated by reference.

63.     The plaintiffs conferred benefits upon Suntrust and Preferred Mortgage in the form of paying a higher than market interest rate for the mortgage due to: (1) an undisclosed yield spread premium; and (2) non-disclosure of prevailing market rates during the week and day of plaintiffs' closing.  Suntrust benefitted through the higher rate of 6.15% and Preferred Mortgage benefitted through its on-going business relationship with Suntrust.

64.     Defendants have retained the benefits of their wrongful conduct, and have been unjustly enriched thereby.  It would be unjust for defendants not to compensate plaintiffs for the value of those benefits.

WHEREFORE, plaintiffs pray for the following relief:

       1)     Compensatory damages;

       2)     Statutory damages;

       3)     Enhanced damages, including punitive damages, as applicable;

       4)     Attorneys Fees and Costs;

       5)     Such Other and Further Relief and the Court deems just

## JURY TRIAL DEMANDED

Plaintiffs demand trial by trial as to all claims so triable

Respectfully submitted,

/S/_____
Scott C. Borison
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016

/S/_____
Robert J. LaRocca
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
(215) 238-1700
(Admitted pro hac vice)

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2010, a copy of the foregoing Amended Complaint was served via electronic notification to all counsel of record through the ECF System.

/s/ Robert J. LaRocca